**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

| | |
|---|---|
| IN RE: ) | CHAPTER 7 |
| ) | |
| ) | CASE NO. 16-20960 (JJT) |
| WALNUT HILL, INC., ) | |
| ) | |
| DEBTOR. ) | |
| ) | |
| BONNIE C. MANGAN, Chapter 7 Trustee for ) | |
| WALNUT HILL, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adv. Pro. No. 18-02028 (JJT) |
| ) | |
| TL MANAGEMENT, LLC, CT FINANCE 1, ) | |
| LLC, PARKSIDE REHABILITATION AND ) | |
| HEALTHCARE CENTER, LLC, GRAND ) | |
| STREET NURSING, LLC, GRAND STREET ) | |
| REAL ESTATE, LLC, GRAND STREET PL, ) | |
| LLC, TUNIC CAPITAL, LLC, TEDDY ) | |
| LICHTSCHEIN, ELIEZER SCHEINER, and ) | |
| ANNEMARIE GRIGGS ) | |
| ) | |
| Defendants. | |

**TRUSTEE'S OBJECTION AND MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANTS' MOTION TO DISMISS**

Bonnie Mangan, Chapter 7 Trustee (the "Trustee") of Walnut Hill, Inc. (the "Debtor"), by and through her attorneys, hereby objects to *Defendants' Motion to Dismiss Complaint and Supporting Memorandum of Law* ("Defendants' Motion") filed by TL Management LLC, CT Finance I, LLC, Parkside Rehabilitation and Healthcare Center ("Parkside"), LLC, Grand Street Nursing, LLC, Grand Street Real Estate, LLC, Grand Street PL, LLC, Tunic Capital, LLC, Teddy Lichtschein ("Lichtschein"), and Eliezer Scheiner ("Scheiner") (collectively, the

"Movants"), dated August 10, 2018 [ECF no. 18).  In support thereof, the Trustee states as follows:

## PRELIMINARY STATEMENT

This is an action brought by the Trustee to, *inter alia*, recover certain preferential transfers of the Debtor's property and to avoid a series of collapsible transactions that resulted in the Debtor transferring all of its assets for no consideration, while: (a) the Debtor retained all of its liabilities; (b) the Debtor's former principal received $175,000.00 for causing the Debtor to enter into the collapsible transactions; and (c) insiders of the Debtor received releases of their multimillion-dollar obligations concerning loan guarantees.  While the Movants use the term "Collapsible Fraudulent Transfer" throughout their motion and memorandum, their argument is based on the divisibility of transactions that were so inter-related as to render them one collapsible transaction.  In addition, the Movants' arguments presuppose facts neither alleged nor inferable with respect to the value of the property transferred by the Debtor in furtherance of the series of transactions.  Movants further make assumptions unrelated to the allegations in the Complaint concerning the value of the liens that CT Finance acquired from TD Bank as part of the Movants' overall scheme to gain leverage over the Debtor.  Because the Complaint has properly alleged valid claims for relief, Defendants' Motion should be denied.

### I.   FACTUAL ALLEGATIONS IN THE COMPLAINT

The Debtor was a corporation that operated a skilled nursing/chronic and convalescent nursing home facility ("SNF") located at 48 Grand Street, New Britain, CT and 55 Grand Street, New Britain, Connecticut (collectively, the "Premises").  Complaint, ¶ 18.  Lichtschein and Scheiner are the owners of, and the individuals who control the activities of, non-individual movants, TL Management, CT Finance, Tunic Capital, Grand Street Nursing, Grand Street Real

{00084936.4 }                                                    2

Estate and Grand Street PL.  Complaint, ¶ 15.  Beginning in January 2015, Scheiner, Lichtschein, TL Management, and/or CT Finance initiated a series of collapsible transactions pursuant to which: (a) the Debtor transferred all of its assets for no consideration; (b) the Debtor retained all of its liabilities; (c) an affiliate of the Debtor, Walnut Hill Real Estate transferred ownership of the Premises, which housed the Debtor's operations to Grand Street Real Estate, an entity owned and controlled by Lichtschein and Scheiner; (d) the Debtor's principal, Annemarie Griggs ("Ms. Griggs") received $175,000.00; and (e) various other insiders of the Debtor received releases of multimillion-dollar obligations under the Loan Documents.[1]  Complaint, ¶¶ 34, 39.

In order to effectuate this scheme, Scheiner, Lichtschein and/or TL Management formed various limited liability companies to take ownership and control of the TD Debt, the assets of the Debtor, and the property owned by WH Real Estate.  Complaint, ¶ 35.  On or about January 20, 2015, Scheiner, Lichtschein and/or TL Management formed CT Finance, the entity that acquired the Loan Documents from TD bank on or about February 6, 2015.  Complaint, ¶¶ 36-37.  CT Finance, by and through Scheiner and Lichtschein, purchased the Loan Documents in order to gain leverage over the Debtor to initiate the series of transactions set forth in the Complaint and to deprive the Debtor of all of its assets.  Complaint, ¶ 38.  As the holder of the Loan Documents, CT Finance, by and through Scheiner and Lichtschein, was then in a position to orchestrate the various transfers outlined below by, *inter alia*, offering to provide releases to various insiders of the Debtor, in exchange for which the Debtor, acting by and through Ms.

---

[1] Unless otherwise stated herein, capitalized terms shall have the same meaning as ascribed in the Complaint.

Griggs, transferred all of its assets for no consideration to entities owned and controlled by Scheiner and Lichtschein, or their assignees.

## II. LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), made applicable to bankruptcy proceedings through Fed. R. Bankr. P. 7012(b), a pleading must contain a short, plain statement of the claim showing the pleader is entitled to relief, and a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *In re: Fuschi-Aibel*, No. 18-50052 (JAM), 2018 WL 3965155, * 1 (Bankr. D. Conn. August 16, 2018) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A pleading cannot merely recite the elements of a cause of action, or provide naked assertionss devoid of further factual enhancement. Id.

In *Iqbal*, the United States Supreme Court described a two-step analysis to evaluate the sufficiency of a complaint. First, all allegations contained in the complaint, except legal conclusions or "naked assertions," must be accepted as true, and second, the complaint must state a plausible claim for relief. *Iqbal* at 678-79. "A claim is facially plausible where the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *In re Sagarino*, No. 16-21218 (JJT), 2017 WL 3865625, at *2 (Bankr. D. Conn. Aug. 29, 2017) (*quoting Iqbal*, 556 U.S. at 678. Determining the plausibility of a claim for relief is context-specific and "requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The chief inquiry when ruling on a motion to dismiss is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), abrogated on other grounds by *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). The

movant carries the burden of demonstrating that dismissal is appropriate. *Paul v. Intel Corp. (In re Intel Corp. Microprocessor Anti–Trust Litig.)*, 496 F.Supp.2d 404, 408 (D.Del.2007).

"In cases decided both before and after *Iqbal* and *Twombly*,[2] courts have given more leeway in pleading where the bankruptcy trustee is the plaintiff." *In re Walter*, 462 B.R. 698, 707 (Bankr. N.D. Iowa 2011). Under *Iqbal* and *Twombly*, "the trustee now must plead in greater detail while still, in many cases, being forced to rely on secondhand information.… As a result, when considering [a motion to dismiss], Trustee's status is a necessary part of the context in which this Court evaluates the facial plausibility of … the Complaint." *In re Walter*, 462 B.R. at 708.

### III. ARGUMENT

#### a. Counts One Through Four Should Not Be Dismissed Because The Premises Was Owned By Non-Debtor, Walnut Hill Real Estate, Inc.

Movants' first argument is that Counts One through Four should be dismissed to the extent that the Trustee's claims seek to avoid the transfer of the Premises from Walnut Hill Real Estate, Inc. ("WH Real Estate") to Grand Street Real Estate. In support of this argument, Movants incorrectly assert that "there is absolutely no allegation that the Debtor had a property interest *of any kind* in the Premises. Motion, at 3.[3]

##### i. The Debtor's interest in property was transferred when the Premises was transferred.

The Complaint alleges that the Debtor had a leasehold interest in the Premises in that it operated a SNF at the Premises. Complaint, ¶ 18. That interest constitutes a property interest of

---

[2] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).
[3] The Trustee's constructive fraudulent transfer claims are specifically governed by Federal Rule of Civil Procedure 8 rather than by the heightened Rule 9(b) pleading standard, as suggested by Movants. *In re: Jevic Holding Corp.*, 2011 WL 4345204 (Bankr. D. Del., September 15, 2011).

{00084936.4}                                      5

the Debtor.  *See In re Stoltz*, 197 F.3d 625, 629 (2d Cir. 1999) ("Section 541 of the Bankruptcy Code, 11 U.S.C. § 541, enumerates the types of property interests that are included in the bankruptcy estate. The estate is defined broadly to include 'all legal or equitable interests of the debtor in property as of the commencement of the case.' 11 U.S.C. § 541(a)(1). '[U]nexpired leasehold interests ... constitute property of the bankrupt estate.'").  Certainly, Movants cannot deny the existence of Debtor's rights in the Premises because they (or some combination of the Movants) insisted that the Premises Purchase Agreement include language wherein the Debtor stipulated to the termination of its right to occupy the Premises.  Complaint, ¶ 48 (alleging that the Premises Purchase Agreement required the Debtor to agree to the termination of its lease to operate its SNF at the Premises, stipulate to waive service of a notice to quit the Premises, stipulate that it had no defense to a summary process action, and agree to the immediate entry of judgment in a summary process action).

Moreover, even though the Debtor did not own the Premises, the Debtor incurred obligations pursuant to the Premises Purchase Agreement – and forfeited property rights thereunder.  That is, pursuant to Premises Purchase Agreement, the Debtor agreed to transfer to Grand Street Real Estate, or one of its affiliates, all of the "assets, operating equipment, machinery, fixtures, furniture, office equipment . . . and personal property of every kind and description owned by [the Debtor], used in the business and operation of the Facility or the Facility Business."  Complaint, ¶ 47.

Thus, even though the Debtor did not own the Premises, the Debtor waived its leasehold right in the Premises and agreed to transfer all of its "personal property of every kind and description" used in the business and operation of its SNF.  Therefore, the transfer alleged in the

Complaint included the transfer of the Debtor's interest in the Premises and the transfer of the Debtor's property.

> ii. **All of the Debtor's assets were transferred pursuant to one collapsible transaction, therefore, it is inappropriate to consider discrete components of the transaction separately.**

The Complaint contains detailed allegations of the scheme concocted by Lichtshein and Scheiner, and their entities, TL Management and CT Finance, to strip the Debtor of all of its assets for no consideration. Complaint, ¶¶ 34-98. Specifically, the Complaint sets forth the manner in which the Movants effectuated their scheme by first obtaining control over debts owed by or guaranteed by the Debtor (Complaint, ¶¶ 28, 34-40); by providing releases to the Debtor's insiders in exchange for the Debtor's transfer of its property (Complaint, ¶¶ 43-45, 69-73); and by using the transparent artifice of a consulting agreement to pay $175,000.00 to the Debtor's principal in order to induce her to assent to the series of transactions that, taken together, comprise the Collapsible Fraudulent Transfers (Complaint, ¶¶ 74-84). Each of the aforementioned transactions involving the Debtor or its insiders was conditioned or dependent upon all of the other transactions. This was part of one integrated, overall scheme to defraud the Debtor and its creditors by depleting the Debtor's assets through an inter-related series of transactions. Complaint, ¶¶ 97-98. Accordingly, defendants defrauded the Estate and its creditors by creating a process whereby the defendants acquired the Debtor's assets for no consideration. Because no one transaction, or group of transactions, would have occurred in the absence of *all* of the transactions occurring, all of the transactions alleged in the Complaint must be collapsed into one integrated transaction and the Trustee should have an opportunity to present evidence in support of these claims.

Under the integrated transaction doctrine, "interrelated yet formally distinct steps in an integrated transaction may not be considered independently of the overall transaction." *Commissioner v. Clark*, 489 U.S. 726, 738 (1989). Although, in the bankruptcy context, the integrated transaction or collapsing doctrine most often arises in leveraged buyout cases, the collapsing doctrine is compatible with fraudulent transfer principles as both emphasize substance over form. *In re: Waterford Wedgewood USA, Inc.*, 500 B.R. 371, 379 (Bankr. S.D.N.Y 2013). "The 'real test of a fraudulent conveyance ... is the unjust diminution of the debtor's estate.' In essence, the Court may consider the net effect of a multi-step transaction." *Id.*, *see also Diebold Foundation, Inc. v. C.I.R*, 736 F.3d 172 (2d Cir. 2013) quoting *HBE Leasing v. Frank HBE Leasing Corp. v. Frank*, 48 F.3d 623, 635-36 (2d Cir.1995) ("In deciding whether to collapse the transaction and impose liability on particular defendants, the courts have looked frequently to the knowledge of the defendants of the structure of the entire transaction and to whether its components were part of a single scheme."); *In re: OODC, LLC*, 321 B.R. 128, 138 (Bankr. D. Del. 2005) ("In deciding whether to 'collapse' a series of transactions into one integrated transaction, the issue is not whether there was common ownership on both sides of the transaction or whether the transfer was a stock or an asset sale, but rather whether there was an overall scheme to defraud the estate and its creditors by depleting all the assets through the use of a leveraged buyout.").

In this case, the Complaint provides a detailed recitation of the scheme to defraud the Debtor's estate by depleting all of its assets through an intricate web of transactions. While the Court may not have jurisdiction over the assets once held in the name of Walnut Hill Real Estate, it certainly has jurisdiction over the Debtor's property and property rights that were transferred

as part of the transfer of the Premises – and more importantly, the Collapsible Fraudulent Transfers.

    b. **The validity and enforceability of liens acquired by CT Finance has not yet been determined and it would be inappropriate to dismiss the Trustee's CUFTA claims at this stage of the litigation.**

Movants' argument that the Trustee's state law fraudulent transfer claims should be dismissed presuppose that the Trustee had an obligation to affirmatively plead that the assets transferred were unencumbered or not fully encumbered. Yet, they offer no authority to support this proposition. Defendants' Motion, at 4-6. More than that, Movants argument for dismissal of the Trustee's state law fraudulent transfer counts is based on their unstated assumption that the amount of the liens acquired by CT Finance exceeded the value of the Debtor's assets and other assets securing those liens. This argument goes well beyond the facts alleged in the Complaint or inferable from the facts alleged in the Complaint. As such, there is no basis to dismiss CUFTA claims for failure to state a cause of action.

    c. **No portion of the Complaint should be dismissed because CT Finance acquired liens on the Debtor's assets as part of Movants' scheme to strip the Debtor of its assets.**

Movants have argued that Counts One through Four, and Eleven through Sixteen of the Complaint should be dismissed because CT Finance, one of the conspirators, acquired TD Bank's valid secured lien. By inference, the Movants have asserted that the Trustee should not be given an opportunity to avoid the transfers that were part of the Collapsible Fraudulent Transfer, and recover the property transferred or the value thereof, because the Debtor's assets, including the Parking Lot, Operating Assets and Accounts Receivable were fully encumbered by the liens held by CT Finance after the assignment from TD Bank. In support of this argument, the Movants point to the fact that: (a) the Complaint does not allege that the property transferred

{00084936.4}    9

as part of the Collapsible Fraudulent Transfer was unencumbered, and (b) that the Complaint does not allege that the property transferred to Parkside was unencumbered.  *See Motion*, at 7.

Not surprisingly, the Movants do not cite to any authority for the proposition that the Trustee had an obligation to affirmatively plead that the assets were unencumbered or not fully encumbered.  In this regard, the Movants conveniently fail to address the fact the Trustee has, in Count Twenty-Four, sought the disallowance of certain claims, including the claims of CT Finance.  Complaint, ¶¶ 268-274.  In addition, the Movants fail to address the fact that the Trustee is seeking, *inter alia*, punitive damages under Conn. Gen. Stat. § 42-110b, The Connecticut Unfair Trade Practices Act, against the Movants, including CT Finance.  As such, with the amount of CT Finance's lien undetermined, it would be inappropriate to dismiss any of the Trustee's claims because of liens now held by CT Finance.

### d. There is no basis for dismissing Count One through Count Four against the so-called "Non-Transferees."

First, as alleged in Paragraph 99 of the Complaint, Scheiner and Lichtschein personally committed, participated in, or directed the commission of the acts of TL Management, Tunic Capital, CT Finance, Grand Street Nursing, Grand Street Real Estate and Grand Street PL.  In so doing, the Trustee alleged that Scheiner and Lichtschein maintained complete domination of the finances, policy, and business practices of these entities, and used this control to perpetrate wrongs against the Debtor and otherwise unjustly act in contravention of the Debtor's rights.  Complaint, ¶¶ 100-01.

By alleging that the aforementioned entities are alter egos of Scheiner and Lichtschein, the Trustee alleged a viable cause of action against not only Scheiner and Lichtschein, but all of the so-called Non-Transfereees.  Moreover, in each of the counts that are the subject of this argument, the Trustee has alleged that she "is entitled to a judgment: (a) avoiding each aspect of

the Collapsible Fraudulent Transfer and preserving the Collapsible Fraudulent Transfer; (b) directing that each component of the Collapsible Fraudulent Transfer be set aside; (c) recovering all assets of the Debtor that were transferred as a component of the Collapsible Fraudulent Transfer**, or the value thereof, plus any profits generated therefrom**, from any or all of the defendants for the benefit of the Debtor's Estate and its creditors;…" Complaint, ¶¶ 114, 122, 129 and 138 (emphasis added).  Therefore, to the extent that the Trustee is successful in avoiding the Collapsible Fraudulent Transfers, she is entitled to seek the value of the property transferred, plus any profits generated from such property, from all of the defendants as a result of their knowing participation in the scheme to defraud the Debtor of its assets.

> **e. The Trustee has adequately alleged sufficient facts to sustain multiple causes of action underlying her civil conspiracy claims.**

The Trustee does not challenge Movants' contention that a claim for civil conspiracy must be based on an underlying cause of action.  However, the Movants fail to consider that the Trustee *has* pled facts sufficient to establish an underlying cause of action.  Beginning in Paragraph no. 34 and continuing through Paragraph no. 104, the Trustee alleged that all of the conspirators, acting together, conspired to create and execute a scheme that resulted in the fraudulent transfer of all of the Debtor's assets for no consideration.  Specifically, the Trustee alleged that all transactions involving the Debtor, or its insiders, was conditioned or dependent upon the other transactions, and that all of the transactions were part of an overall scheme to defraud the Debtor and its creditors by depleting the Debtor's assets through an inter-related series of transactions.

Here, the Trustee pled that Scheiner and Lichtschein and/or TL Management initiated their plan by first gaining leverage over the Debtor, and then caused the Debtor to fraudulently transfer all of its assets to entities formed, owned and controlled by Scheiner and Lichtschein or

TL Management (or their assignee) for no consideration, while the Debtor retained all of its liabilities. Complaint, ¶¶ 34-42, 69-73. The Trustee also alleged that the conspirators provided releases to certain insiders of the Debtor in order to induce the Debtor's principal, Ms. Griggs, to cause the Debtor to transfer its assets for no consideration. Complaint, ¶¶ 43-47. Finally, the Trustee alleged that the conspirators entered into a sham consulting agreement with Ms. Griggs in order to provide a mechanism to pay $175,000 to Ms. Griggs as compensation for to her for causing the Debtor to fraudulently transfer all of its to the conspirators for no consideration. Complaint, ¶¶ 74-84. Moreover, the Trustee alleged that although the $175,000 payment to Ms. Griggs may have originally been made by Tunic Capital, the Debtor, directly or indirectly, reimbursed Tunic Capital, Scheiner, Lichtschein, TL Management, Grand Street Nursing, and/or Parkside for both installments of the Consulting Fee. Complaint, ¶¶ 81, 84.

Once again, Movants have selectively pointed to certain discrete transactions and have claimed that those transactions were undertaken by lawful means. This argument is unavailing, however, because all of the transactions that comprise the Collapsible Fraudulent Transfers must be viewed as one, integrated transaction. All of the sub-transactions described in the Trustee's Complaint were effectuated as part of a scheme to cause the Debtor to fraudulently transfer all of its assets for no consideration – and none of the transactions would have taken place unless *all* of the transactions took place.

### f. Count Seventeen adequately alleges a basis to impose a constructive trust.

"A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee ... The imposition of a constructive trust by equity is a remedial device designed to prevent

unjust enrichment ... Thus, a constructive trust arises where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." *New Hartford v. Connecticut Resources Recovery Authority*, 291 Conn. 433, 466, 970 A.2d 592 (2009); *Stornawaye Properties, Inc. O'Brien*, 94 Conn. App. 170, 175-76 (Conn. App. 2006).

Here, the Trustee has alleged that Parkside and Grand Street PL obtained, and hold legal title to, the Debtor's assets by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by another form of unconscionable conduct, artifice, concealment, or questionable means. Complaint, ¶ 226. That allegation, although conclusory, is predicated upon the numerous factual allegations that the Movants were in a position to dominate the Debtor after CT Finance acquired the TD Bank debt, and exploited that position of dominance to coerce the Debtor into transferring all of its assets for no consideration. Further, the Movants incentivized Ms. Griggs to violate her fiduciary duty to the Debtor by paying her $175,000. Therefore, there is no basis to dismiss Count Seventeen.

    **g. Count Eighteen adequately alleges a claim that the Movants violated CUTPA.**

Count Eighteen properly alleges a CUTPA claim as it sets forth the financial fraud perpetrated by Defendants to obtain the Debtor's assets for no consideration. Once again, Movants look to a discrete transaction within the Collapsible Fraudulent Transfer and move to dismiss a portion of the Complaint based upon an argument that that one transaction is not actionable. As stated above, the Collapsible Fraudulent Transfer, once integrated, lays bare the series of actions undertaken by the Movants that resulted in the Debtor being stripped of all of its assets for no consideration. Although Movants assert that Grand Street Real Estate never received the Debtor's assets, they fail to accept that the Complaint alleges that Grand Street Real

Estate acquired the Premises as one component of the Collapsible Fraudulent Transfer.  In addition, the Movants refuse to consider that the Debtor was a signatory to the Premises Purchase Agreement and agreed to transfer to Grand Street Real Estate, or one of its affiliates, all of the "assets, operating equipment, machinery, fixtures, furniture, office equipment . . . and personal property of every kind and description owned by [the Debtor], used in the business and operation of the Facility or the Facility Business."  Complaint, ¶ 47.  Furthermore, as part of the Premises Purchase Agreement, the Debtor agreed to termination of its lease rights at the Premises, waived all defenses to summary process, agreed to entry of judgment in a summary action, etc.  Complaint, ¶ 48.  Therefore, in a count alleging CUTPA liability related to the Collapsible Fraudulent Transfer, there is no basis to dismiss Grand Street Real Estate.  Grand Street Real Estate insisted upon the Debtor's surrender of property and waiver of rights as part of the Premises Purchase Agreement – and that transaction was only one piece of a much larger scheme orchestrated by Grand Street Real Estate's principals and affiliates.

      With respect to Movants' broader argument that Count Eighteen should be dismissed, it is clear that Movants continue to view each component of the Collapsible Fraudulent Transfer independently.  There was no need for the Trustee to allege that the transfer of the Parking Lot by way of a publicly recorded deed was unlawful or that transferring real property by way warranty deed causes a substantial injury to consumers.[4]  Simply put, these are nothing more than red herrings.  Within Paragraphs nos. 34 through 98, the Trustee alleged specific facts which, if proven, will conclusively establish that the Movants' conduct, and all of the transactions engineered by the Movants, were part of an overall scheme that defrauded the Debtor and its creditors by denuding the Debtor of all of its assets.  Once the last of the

---

[4] *See* Motion, at 13.

{00084936.4}          14

transactions was completed, Movants had systematically caused the Debtor to transfer its assets and cease operations. In exchange, the Debtor received nothing. It was *this* conduct on the part of the Movants that was immoral, unethical, oppressive and unscrupulous, and allegations of that conduct is sufficient to maintain a cause of action under CUTPA.

    **h. Count Nineteen states a claim for unjust enrichment.**

The Complaint alleges that Scheiner, Lichtschein, CT Finance, TL Management, Tunic Capital, Grand Street Nursing, Grand Street PL, and Grand Street Real Estate received a substantial financial benefit from the Collapsible Fraudulent Transfers and the 90-day Transfers. Complaint,¶ 236. While Movants continue to parse the transactions separately, the Collapsible Fraudulent Transfer was actually one, integrated transaction. The Debtor received nothing for the transfer of the Parking Lot, or for the termination of tenancy rights in the Premises, or for its waiver of rights in a summary process action or for its agreement to transfer its personal property. Even though it is unclear which of Scheiner, Lichtschein or their entities were unjustly enriched by the Movants' conduct, the Trustee should be allowed prove that one or more of these persons or entities was enriched by Movants' scheme because any enrichment enjoyed by the Movants as a result of their scheme would be unjust.

    **i. Count Twenty states a claim for unjust enrichment.**

Paragraph no. 184 of the Complaint identifies, by date and amount, six (6) separate transfers of the Debtor's funds to Parkside between March 30, 2016 and May 27, 2016 – all within ninety (90) days of the Petition Date. These transfers, totaling **$1,327,030.09**, were the final step in the scheme that defrauded the Debtor of its assets. Regardless of whether these transfers constitute actual or constructive fraudulent transfers (Counts Eleven through Fourteen), the Debtor received no consideration for these transfers. No consideration, of any kind, was

given to the Debtor for these transfers; not from Parkside and not from the other Movants. As such, Parkside was: (a) benefited by these transfers: (b) unjustly did not pay the Debtor for benefits it received, and (c) the failure of Parkside to compensate the Debtor for the transfers was to the Debtor's detriment. As a result, all of the elements of unjust enrichment have been sufficiently pled. The same analysis would apply as to any benefit Parkside has enjoyed as a result of the Collapsible Fraudulent Transfer: The Debtor received nothing as a result of the Collapsible Fraudulent Transfer and to the extent that Parkside was benefited by that transaction, Parkside has been unjustly enriched.

WHEREFORE, the Trustee respectfully requests an extension of time to September 28, 2018, for the Trustee to file a response to the Defendants' motion to dismiss.

Dated at New Haven, CT, this 28th day of September, 2018.

> THE PLAINTIFF,
> BONNIE C. MANGAN,
> CHAPTER 7 TRUSTEE OF
> WALNUT HILL, INC.
>
>
> By: */s/ Lawrence S. Grossman*
> Lawrence S. Grossman, Esq. [ct15790]
> GREEN & SKLARZ, LLC
> 700 State Street
> New Haven, CT  06511
> Tel: 203-285-8545
> Fax: 203-306-3391
> LGrossman@gs-lawfirm.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 28th day of September, 2018, a copy of the foregoing Trustee's Objection And Memorandum Of Law In Opposition To Defendants' Motion To Dismiss was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

By: */s/ Lawrence S. Grossman*  
Lawrence S. Grossman, Esq.